■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARVIN PINKNEY, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Zelman, J.), rendered December 20, 1982, convicting him of murder in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence and identification testimony.

Ordered that the judgment is modified, on the law and the facts, by reversing the defendant's convictions of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree, vacating the sentences imposed thereon, granting that branch of the defendant's motion which was to suppress certain physical evidence, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.

As part of his omnibus motion, the defendant challenged the propriety of a police-arranged showup procedure which resulted in positive identifications by four witnesses to the crimes. We agree with the hearing court that, under the totality of the circumstances, the procedures employed were not so unnecessarily suggestive as to be conducive to an irreparably mistaken identification. Therefore, that branch of the defendant's omnibus motion which was to suppress this evidence was properly denied *(see, e.g., People v Logan,* 25 NY2d 184, *cert denied* 396 US 1020, *rearg dismissed* 27 NY2d 733, 737; *People v Smith,* 46 AD2d 639, *affd* 38 NY2d 882;

*People v Digiosaffatte,* 63 AD2d 703, citing *Neil v Biggers,* 409 US 188, 193).

The defendant further sought to suppress two guns which had been seized by the police as a result of a warrantless search of his vehicle. Under the facts of this case, the search was neither supported by probable cause nor justified by exigent circumstances or any other exception to the exclusionary rule *(see, e.g., Coolidge v New Hampshire,* 403 US 443; *People v Martin,* 48 AD2d 213, 216; *see also, Chambers v Maroney,* 399 US 42; *Matter of Kwok T.,* 43 NY2d 213). Accordingly, the convictions for criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree are reversed.

However, the improper admission of the guns into evidence does not mandate reversal of the conviction for murder in the second degree since the admission in evidence of the murder weapon was harmless error in view of the other overwhelming evidence on that charge. Four witnesses testified at the trial that they were in the parking lot of a shopping mall when they heard the glass door of a liquor store shatter and saw a man, later identified as the defendant, running out of the store. All had a good opportunity to view this man, were able to see his face, and later gave police rather detailed descriptions of this man and of his clothing. One of these witnesses saw the man putting something inside his coat (the others simply saw him with his hand inside his coat) and watched him get into a car and drive off. Several of the witnesses then walked over to the store and saw blood and a man lying on the floor inside. The man on the floor was Andrew Kalina, and he had been shot dead by a .22 caliber bullet. A second, deformed .22 caliber bullet was also found next to Kalina. A fifth witness testified that on the day of the incident he was in his apartment above the liquor store when he heard two gunshots followed by the sound of breaking glass. He went downstairs and found Kalina lying on the floor of the liquor store.

Shortly after this incident, the original 4 witnesses were brought by police to a hospital where 3 of them identified the defendant as the man they had seen running from the liquor store and also identified various articles of his clothing as those worn by the man that they had seen. The fourth witness identified certain of the defendant's physical features and certain articles of his clothing as similar to those of the man at the liquor store. One of these witnesses also identified the defendant's car, which was parked outside, as the one in

which the man at the scene of the crime had driven away. Yet another witness, who had been involved in a hit-and-run accident with the defendant when the defendant was driving himself to the hospital and who was able to get the license number of the defendant's car and report the incident to the police, was also brought to the hospital by the police and was able to identify the defendant and his car. Other admissible evidence linking the defendant to the crime of murder in the second degree was that the blood samples found on the glass fragments of the liquor store's door and on the defendant's car and clothing were genetically consistent with each other but not with a sample of Kalina's blood, and that the genetic factors found in this blood occur in only 6% of the population. Finally, the defendant's behavior itself demonstrated consciousness of guilt. For instance, he parked his car two blocks away from the hospital and walked to the emergency room, although he was bleeding profusely from the leg. Moreover, his responses to police questioning at the hospital concerning his injury were evasive and false. He denied owning a car and having just been involved in an accident, and claimed that he had walked to the hospital after being mugged nearby, but could not give many details about the mugging.

In conclusion, we believe that this is an appropriate case to apply the harmless error doctrine since there was overwhelming evidence of the defendant's guilt of murder in the second degree and since it cannot be said that there is any reasonable possibility that the improper admission of the murder weapon contributed to that conviction (see, People v Crimmins, 36 NY2d 230). Bracken, J. P., Rubin, Eiber and Spatt, JJ., concur.