OPINION OF THE COURT
Chief Judge Wachtler.
While this action was pending in Supreme Court, the Public Service Commission (PSC) conducted a public hearing and issued a determination purporting to resolve the underlying controversy in plaintiffs favor. The primary question presented by this appeal is whether, pursuant to principles of issue preclusion, the PSC’s determination is binding upon defendant in this action. We hold that under the circumstances presented here, unlike those in Allied Chem. v Niag *151 ara Mohawk Power Corp. (72 NY2d 271 [decided today]), it is not, and modify the Appellate Division order accordingly.
Plaintiff Staatsburg Water Company is a public utility corporation which supplies water to customers in parts of Dutchess County, including the Village of Staatsburg. Its activities, including the rates charged, are regulated by the Public Service Commission, which appears in this appeal as amicus curiae. Among plaintiff’s customers is the defendant, Staatsburg Fire District, to whom the Water Company supplies water for public fire protection through a number of fire hydrants. Plaintiff charges for this service based on a fixed annual rate per hydrant.
Since January 1, 1982, defendant has refused to pay plaintiff for this service, complaining that the service was inadequate due to malfunctioning hydrants and insufficient water pressure. As a result, plaintiff experienced a revenue deficiency and, in November 1983, sought permission from the PSC to assess its other customers a surcharge to make up for defendant’s nonpayment. In an order issued July 31,1984, the PSC authorized a temporary increase but withheld a final determination regarding the proposed surcharge until plaintiff demonstrated that it had taken "all necessary and practicable steps, which may include the initiation of legal action, to secure payment from the Fire District.”
Accordingly, plaintiff commenced this action in Supreme Court, seeking to recover the unpaid public fire protection charges. Defendant answered with allegations that the service provided by plaintiff was inadequate, and plaintiff, in turn, moved for summary judgment on the ground that the PSC’s July 31 order had resolved the adequacy-of-service issue in plaintiff’s favor. Supreme Court denied the motion, noting that the PSC had not determined the merits of defendant’s claim.
Meanwhile, and on March 27, 1985, plaintiff again filed for approval of a surcharge to make up for the lost revenues resulting from defendant’s continued nonpayment. In light of Supreme Court’s decision, however, the PSC ordered that, before considering the surcharge proposal, it would initiate a formal investigation to determine whether plaintiff’s fire protection service was adequate and whether defendant was justified in withholding payment. A public hearing was scheduled and all interested parties, including defendant, were invited to participate. Defendant’s attorney appeared at the *152 hearing, but protested at the outset that the PSC had no authority to rule on the dispute. Defendant contended that the appropriate forum for resolution of the issue was Supreme Court, where this action remained pending. Accordingly, defendant presented no witnesses at the hearing, although its attorney conducted cross-examination, introduced three exhibits and filed posthearing briefs.
Following the hearing, the PSC determined, in essence, that the service supplied by plaintiff was adequate and that defendant was not justified in withholding payment. The PSC again reserved decision on plaintiff’s request for a surcharge until after plaintiff sought recovery from defendant through litigation, a task which, the PSC opined, should be "facilitated” by its findings. Armed with this determination, plaintiff returned to Supreme Court, moved to amend the ad damnum clause in the complaint and renewed its motion for summary judgment, contending that the PSC’s finding was binding on the defendant. Supreme Court denied the motion to amend the complaint and, refusing to give collateral estoppel effect to the PSC’s determination, denied the motion for summary judgment.
The Appellate Division reversed and granted both the motion to amend the ad damnum clause and the motion for summary judgment. Relying primarily on Ryan v New York Tel. Co. (62 NY2d 494), the court ruled that the PSC’s determination was entitled to preclusive effect because the PSC was an appropriate body to determine the adequacy of plaintiff’s service, the hearing procedures were substantially similar to those utilized in a court of law, and the defendant was given an opportunity to present and cross-examine witnesses, present exhibits and submit briefs (131 AD2d 832).
This convoluted procedural background gives rise to a straightforward question: Should the PSC’s determination that plaintiff’s service to defendant was adequate be binding on defendant in this litigation? Plaintiff’s primary contention is that the doctrine of collateral estoppel precludes relitigation of the issue.
The relevant principles may be quickly restated. Collateral estoppel, or issue preclusion, may be invoked in a subsequent action or proceeding to prevent a party from relitigating an issue decided against that party in a prior adjudication (Ryan v New York Tel. Co., supra, at 500; Schwartz v Public Adm’r, 24 NY2d 65, 70). It is now familiar law that "the doctrines of *153 res judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies * * * when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunal employing procedures substantially similar to those used in a court of law” (Ryan v New York Tel. Co., supra, at 499 [citations omitted]). Whether the prior adjudication occurred in the context of an administrative determination, an arbitration or a full-fledged judicial proceeding, issue preclusion is applicable only if there is "an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and [there was] a full and fair opportunity to contest the decision now said to be controlling” (Schwartz v Public Adm’r, supra, at 71).
In addition, we have consistently emphasized that these principles are not to be mechanically applied as a mere checklist. Collateral estoppel is an elastic doctrine and the enumeration of these elements is intended as a framework, rather than a substitute, for analysis. For example, the question whether a party had a full and fair opportunity to contest the prior decision is not answered simply by reference to the procedural benefits available in the first forum or by a conclusion that the requirements of due process were satisfied (see, Gilberg v Barbieri, 53 NY2d 285, 292). Instead, the analysis requires consideration of "the realities of litigation”, such as recognition that if the first proceeding involved trivial stakes, it may not have been litigated vigorously (see, id., at 292-293; Schwartz v Public Adm’r, supra, at 72).
In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings (see, Gilberg v Barbieri, supra, at 291-292; People v Berkowitz, 50 NY2d 333, 344; Matter of Venes v Community School Bd., 43 NY2d 520, 524).
With these principles in mind, we conclude that the proceeding which led to the PSC’s determination suffers from a number of defects which, in combination, deprive it of preclusive effect. These defects all spring from the fact that the PSC’s finding was, in essence, an unsolicited advisory opinion *154 made outside the context of any complaint pending before the agency and without any direct consequences for defendant.
As a result, defendant was not, in the true sense of the word, a party to the PSC proceeding — a basic prerequisite for application of the doctrine (see, Liss v Trans Auto Sys., 68 NY2d 15; Gilberg v Barbieri, supra, at 291). Significantly, defendant did not choose to litigate the parties’ dispute before the PSC (cf., Clemens v Apple, 65 NY2d 746; Ryan v New York Tel. Co., 62 NY2d 494, supra). Had defendant filed a complaint with the PSC concerning the adequacy of the fire protection service (see, Public Service Law §§ 89-i, 89-j; 16 NYCRR 12.1), and thereby submitted to the PSC’s jurisdiction over the matter, we might take a different view (cf., Allied Chem. v Niagara Mohawk Power Corp., 72 NY2d 271 [decided today], supra).
Here, however, the hearing was initiated on the PSC’s own motion. The PSC is, of course, authorized to initiate investigations into the "methods employed in furnishing [water] service” and, following such an investigation and a hearing, may order "such improvement in the supply or distribution of water, or in the methods employed * * * as will in its judgment be adequate, just and reasonable” (Public Service Law §§ 89-i, 89-j). But nothing in this grant of authority suggests that, at least in the absence of a complaint filed by a customer, the PSC has authority to adjudicate payment disputes between the utility and its customers, or to hale customers before its tribunals for that purpose. As the PSC itself recognized in both of its orders, it had no power to compel defendant to pay for the water service; plaintiff was, in effect, directed to Supreme Court for that relief. In these circumstances, because the outcome of the hearing had no direct consequences for defendant, it cannot be said that defendant was a party to the PSC proceeding. At most, it was an interested, albeit unwilling, participant in a public investigation of the Water Company’s practices.
Similarly, the lack of any direct stake in the outcome of the proceeding left defendant with little incentive to fully litigate the issue. Thus, although defendant was granted the opportunity to participate, this did not necessarily amount to a full and fair opportunity to contest the determination. It is urged, nonetheless, that sufficient incentive was supplied by the potential collateral estoppel effect of the PSC’s determination. We have recognized that the foreseeability of future *155 litigation can provide incentive for avoiding an adverse determination which may later be given preclusive effect (see, Koch v Consolidated Edison Co., 62 NY2d 548, 557, cert denied 469 US 1210). However, it would be an unwarranted extension of that principle and fundamentally unfair to give preclusive effect to a determination where the only incentive to litigate stems from its potential collateral effects. Such a ruling would ill serve the litigation-limiting purposes of collateral estoppel; it would simply encourage overlitigation at an earlier stage. As one commentator has put it: "Instead of more litigation later, there will be more litigation now” (Rosenberg, Collateral Estoppel in New York, 44 St John’s L Rev 165, 177).
In addition, the absence of immediate consequences for defendant in the PSC proceeding calls into question whether the PSC determination was made in the context of an adjudicatory proceeding (see, Allied Chem. v Niagara Mohawk Power Corp., supra). The term "adjudicatory”, among other things, suggests at least that the proceeding will result in a "determination of the legal rights, duties, or privileges” of the parties (State Administrative Procedure Act § 102 [3]). Here, the PSC’s determination did not lead to any order, judgment, decree or other pronouncement fixing such rights, duties or obligations.
The point may be best illustrated by contrasting the cases in which we have given preclusive effect to nonjudicial determinations. For example, in Ryan v New York Tel. Co. (62 NY2d 494, supra), the administrative finding given preclusive effect — that the plaintiff had illegally removed company property — resulted in the denial of plaintiff’s claim for unemployment insurance benefits (see also, Clemens v Apple, 65 NY2d 746, supra [arbitration panel’s finding of no causal relationship between accident and injury resulted in denial of no-fault benefits]; Bernstein v Birch Wathen School, 71 AD2d 129, affd 51 NY2d 932 [unemployment insurance benefits denied based on finding that defendant had voluntarily left employment]). In each of these cases, the finding for which preclusive effect was sought was a necessary step in fixing the legal rights of a party to the proceeding, and was thus made in the context of an adjudication. The same cannot be said for the present case, because the PSC was not in a position to grant or deny defendant any relief.
Notwithstanding these defects, plaintiff and the PSC urge that preclusion is warranted because, under the doctrine *156 of primary jurisdiction, the question whether plaintiffs service was adequate should be determined in the first instance by the PSC. We disagree. The doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views” (United States v Western Pac. R. R. Co., 352 US 59, 64; see, Flacke v Onondaga Landfill Sys., 69 NY2d 355, 362; Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 22; see generally, Jaffe, Primary Jurisdiction, 77 Harv L Rev 1037). It is apparent from this definition that the doctrine is not a license for an agency to interject itself into a pending court action, as the PSC attempted to do here. It is for the court to determine whether the doctrine is triggered by issues presented in a lawsuit and, if so, to refer such issues for the agency’s resolution (see, Nader v Allegheny Airlines, 426 US 290, 303-304; Capital Tel. Co. v Pattersonville Tel. Co., supra, at 22-23).
Notably, however, neither plaintiff nor defendant requested the court to refer any issues in this case to the PSC for resolution. Thus, this appeal does not require us to decide whether such an application should have been granted and we express no view on that question. Nor does the doctrine bolster plaintiffs collateral estoppel argument. Even assuming that the doctrine of primary jurisdiction is applicable because the PSC has special competence to decide the question, the barriers to application of issue preclusion remain. The competence or expertness of the tribunal does not neutralize the defects that we have identified and, in the absence of a reference of the issue to the agency by the court, the doctrine of primary jurisdiction does not provide an independent basis for giving the determination binding effect in this litigation.
For all of these reasons, we conclude that the PSC’s determination is not entitled to preclusive effect and that, therefore, plaintiff’s motion for summary judgment should not have been granted. However, the Appellate Division did not abuse its discretion in allowing plaintiff to amend the ad damnum clause of its complaint (see, Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18).
Accordingly, the order of the Appellate Division should be *157 modified by denying plaintiffs motion for summary judgment, and, as so modified, affirmed, with costs to appellant.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order modified by denying plaintiffs motion for summary judgment and, as so modified, affirmed with costs to appellant.