Marvin PINKNEY, Petitioner–Appellant,

v.

John KEANE, Superintendent, Sing Sing Correctional Facility, Ossining, New York, Respondent–Appellee.

No. 361, Docket 90–2250.

United States Court of Appeals, Second Circuit.

Argued. Oct. 18, 1990.

Decided Dec. 7, 1990.

Diarmuid White, New York City (Herald Price Fahringer, Lipsitz, Green, Fahringer, Roll, Schuller & James, of counsel), for petitioner-appellant.

Michael O'Brien, Asst. Dist. Atty., Kew Gardens, N.Y. (John J. Santucci, Dist. Attorney, Queens County, of counsel), for respondent-appellee.

Before OAKES, Chief Judge, PIERCE and WINTER, Circuit Judges.

OAKES, Chief Judge.

This case presents the unique situation of a federal court denying a habeas petition on the basis of evidence that the state appellate court had ordered suppressed, the federal court having found that the suppression order was erroneous.

Following a jury trial in the Supreme Court of the State of New York in 1982, Marvin A. Pinkney was convicted of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. He was sentenced to concurrent terms of 25 years to life on Count One, 7½ to 15 years on Count Two, and 3½ to 7 years on Count Three. On direct appeal, the Appellate Division reversed the trial court's denial of a motion to suppress two handguns seized from Pinkney's car, and modified the judgment by reversing the two convictions for weapons possession and dismissing those counts of the indictment. *See People v. Pinkney*, 135 A.D.2d 748, 749, 522 N.Y.S.2d 653, 654 (2d Dept. 1987). The Appellate Division affirmed the conviction for murder, however, finding that the erroneous admission of the handguns was harmless with respect to that conviction in light of other compelling evidence of Pinkney's guilt. *See id.* The Court of Appeals denied Pinkney's application for leave to appeal the affirmance of the murder conviction. *See People v. Pinkney*, 71 N.Y.2d 1031, 530 N.Y.S.2d 566, 526 N.E.2d 59 (1988). The People did not seek leave to appeal the reversal of the weapons possession convictions.

On March 3, 1989, Pinkney filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York, Edward R. Korman, *Judge*, claiming that he was denied his federal constitutional rights on various grounds, including that

the identification testimony at trial was the product of impermissibly suggestive procedures, that his attorney was improperly barred from attacking the reliability of the identification testimony, and that his post-arrest silence was wrongly used against him. After all papers were filed, the district court advised the parties that, while the claims raised by petitioner appeared to have merit, the Appellate Division's decision that the two seized handguns should have been suppressed was unpersuasive. The court therefore requested briefing on the lawfulness of the search of petitioner's car and seizure of the weapons, over petitioner's objection that the issue could not be relitigated. The court also held a brief evidentiary hearing on the issue. By memorandum and order dated May 10, 1990, the district court denied Pinkney's petition, concluding that there was no need to resolve the claims presented because the Appellate Division had erred in holding that the search of Pinkney's car and the seizure of the handguns was unlawful, and admission of the handguns rendered harmless the errors alleged in the petition. *See Pinkney v. Keane,* 737 F.Supp. 187 (E.D.N.Y.1990). The district court issued a certificate of probable cause pursuant to 28 U.S.C. § 2253, and Pinkney appealed. Because we agree with the district court that appellant's conviction was not constitutionally deficient, we affirm.

## BACKGROUND

The pertinent facts regarding the search of appellant's car, which are set out in the trial judge's Memorandum and Order Denying Defendant's Motion to Suppress Evidence, *People v. Pinkney,* No. 2614/81

(N.Y.Sup.Ct. Oct. 25, 1982), and which were adopted by the district court, *see* 737 F.Supp. at 190–91,[1] can be briefly summarized.

On October 1, 1981, at approximately 4:45 p.m., Andrew Kalina was shot to death inside his liquor store at 44–24 College Point Boulevard in Queens, New York. Four persons witnessed a man running out of the store shortly after the shooting. When the first set of police officers arrived at the scene, they found the front door of the store open and its glass shattered. A trial of blood led from the shattered glass to the street outside. The police notified all hospitals in the area to look out for possible suspects seeking treatment for injuries.

Shortly before 5:00 p.m. on the day of the murder, a motorist, Stanley Zadwydos, was involved in an accident with a foreign car on the Interboro Parkway near Queens Boulevard. The foreign car drove off without stopping, but Zadwydos pursued and caught it. He then confronted its driver, who said that he was bleeding and that he was heading for a hospital. The foreign car then sped off again, and Zadwydos eventually lost sight of it. He then notified the police about the accident and gave them the foreign car's license plate number. The police ran a check on the number and learned that the car was registered to Marvin Pinkney.

At approximately 5:15 p.m., Officers William Fitzpatrick and Thomas McGovern received radio instructions to go to the Jamaica Hospital emergency room. They were given a description of the perpetrator of a robbery, and told that he might be injured.[2]

1. Appellant suggests that the usual deference accorded to a suppression court's factual findings under 28 U.S.C. § 2254(d) is inappropriate in this case. The claim is that the Appellate Division, which is empowered by New York law to review independently issues of fact, *see* N.Y. Crim.Proc.Law § 470.15(1) (McKinney 1983), rejected the trial court's factfindings. However, it is unclear from the Appellate Division's brief treatment of the search and seizure issue, *see People v. Pinkney,* 135 A.D.2d at 749, 522 N.Y. S.2d at 654 ("Under the facts of this case, the search was neither supported by probable cause nor justified by ... any other exception to the

exclusionary rule"), whether the Appellate Division rejected the facts as found by the trial court, or simply concluded that those facts did not, as a matter of law, support a finding of probable cause. Under these circumstances, we believe that it was appropriate for the district court to defer to the trial court's findings of fact.

2. Not mentioned in the state court findings, but noted in the transcript of the suppression hearing and recognized by the district court, is the fact that Officer Fitzpatrick first received a message advising him to investigate an "aided" at Jamaica Hospital, *Pinkney v. Keane,* 737 F.Supp.

As the officers approached the hospital, they noticed footprints of blood, which led them to the emergency room, where a man was being treated for a leg injury. In response to a question by McGovern, the man stated that he had been mugged by two white men, and had walked to the hospital.

Officer Fitzpatrick left his partner with the suspect and began tracing back the trail of blood. It led him directly to a yellow Toyota parked on a public street about 1½ blocks from the hospital. The keys were lying on the hood of the car, and the doors were unlocked. Fitzpatrick entered the car and saw a pool of blood inside on the driver's side. He then got out of the car, went around to the passenger side, and looked through the side window. He now noticed an open bag from which the handle of a gun protruded. The officer reentered the car and seized the bag, which contained two handguns.

At trial, four eyewitnesses identified Pinkney as the man who had run out of Kalina's liquor store after the shooting and driven away. Stanley Zadwydos testified regarding his hit-and-run accident with the defendant. The People introduced into evidence the two weapons seized from Pinkney's car, one of which, a .22 caliber pistol, contained four spent shells and had been fired shortly before it was seized. A police department ballistics expert testified that the bullet recovered from the body of the deceased had been fired from that .22 caliber pistol. Other expert testimony established that blood samples found on the shattered glass from the liquor store door and on Pinkney's clothes and car were genetically consistent with each other, and that the genetic factors found in this blood occur in only six percent of the population.

## DISCUSSION

A. *The District Court's Review of the Appellate Division's Suppression Order.*

■ The principal question raised on this appeal is whether a federal court in a habe-

at 192, that is, to investigate the cause of a patient's injury. It was in a second message that Fitzpatrick was informed that the "aided"

as corpus proceeding is necessarily bound by a state appellate court's ruling in petitioner's favor on a matter of federal constitutional law, where that ruling itself reversed a ruling by the state trial court that was adverse to the petitioner. Appellant claims that the answer is yes, and invokes principles of federalism, comity, waiver, and collateral estoppel, among other things, in support of his position. For the reasons set forth below, we disagree with the appellant, and hold that, under the circumstances of this case, the district court did not err in reviving the state trial court's denial of suppression.

■ The power of the federal courts to grant writs of habeas corpus is derived from 28 U.S.C. § 2241, which provides that any federal court may grant the writ to any person restrained within its jurisdiction or, where the application is made by a state prisoner, convicted and sentenced within its jurisdiction. *See* 28 U.S.C. § 2241(a), (d) (1988). Appellant's first claim is that section 2241 does not provide a jurisdictional basis for collateral review of a state court ruling adverse to the prosecution. However, the fact that state prosecutors cannot themselves initiate collateral review proceedings in federal court does not mean that federal courts lack power to consider arguments by the State that bear on whether a prisoner is in fact "in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2241(c)(3) (1988). Moreover, appellant's narrow reading of section 2241 ignores the equitable principles governing the Great Writ, reflected in the plenary discretion vested in habeas courts to "hear and determine the facts, and dispose of the matter *as law and justice require.*" 28 U.S.C. § 2243 (1988) (emphasis added); *see also Kuhlmann v. Wilson,* 477 U.S. 436, 447, 106 S.Ct. 2616, 2623, 91 L.Ed.2d 364 (1986) (reaffirming equitable nature of habeas writ); *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963) (same).

might have been involved in a recent armed robbery, and was given the robber's description. *Id.*

Even if the district court had authority to reopen the issue of the legality of the search of appellant's car, appellant argues, the District Attorney waived the right to relitigate that issue by failing to seek review of the Appellate Division's suppression order in the Court of Appeals. In other words, appellant would have us impose the exhaustion of remedies requirement, 28 U.S.C. § 2254(b) (1988), on the prosecution.[3] Appellant supports this claim by arguing that "symmetry" requires prosecutors to overcome the same obstacles that petitioners must face when seeking habeas review.

As a preliminary matter, we believe that symmetry, while aesthetically pleasing, is a particularly inappropriate principle to invoke in a habeas proceeding under 28 U.S.C. § 2254. Habeas corpus is not a neutral proceeding in which the petitioner and the State stand on an equal footing. Rather, it is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment of conviction. Because of this, the petitioner generally bears the burden of proof throughout the habeas proceeding. *See* 28 U.S.C. § 2254(d) (1988) (petitioner must prove "by convincing evidence that [a] factual determination by the State court was erroneous"); *Harned v. Henderson*, 588 F.2d 12, 22 (2d Cir.1978) (petitioner must prove by a preponderance of the evidence claims in the petition). *See generally* 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure* § 22.1 (1988) (discussing burdens of proof in habeas proceedings). In addition, issuance of the writ is an extraordinary remedy, *see Goto v. Lane*, 265 U.S. 393, 401, 44 S.Ct. 525, 527, 68 L.Ed. 1070 (1924), granted "only in the exercise of a sound judicial discretion." *Id.; see also Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587,

590, 94 L.Ed. 761 (1950) ("[H]abeas corpus is a discretionary writ."). To constrain the State merely to impose some symmetry on an otherwise one-sided proceeding would be to substitute aesthetics for legal reasoning.

Symmetry aside, appellant's position is unsupported by the principles underlying the requirement that petitioners exhaust their state remedies. The exhaustion rule "springs primarily from considerations of comity," *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), and is concerned with the unseemliness of federal courts overturning state convictions without first allowing the state courts an opportunity to correct any constitutional violations. *See Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).[4] Here, the federal court's review of the state proceeding neither frustrates the state's power to punish offenders, nor impugns the state's good faith in honoring constitutional rights. Indeed, a federal habeas court's correction of a state appellate court ruling in defendant's favor can only result in the federal court's upholding the state conviction and faulting the state court for overzealousness, not neglect, in the protection of federal constitutional rights. Appellant's strange notion of comity, on the other hand, would have us upset a valid state conviction in order to shield an appellate court ruling that overzealously protects federal rights.

Appellant next contends that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which precludes collateral review of most Fourth Amendment rulings adverse to a petitioner, should also

---

**3.** Appellant also invokes the procedural default rule, citing *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), and *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), for the proposition that the failure to raise an issue on direct appeal forecloses subsequent federal habeas review. In light of our disposition of appellant's exhaustion argument, which raises all the same concerns as his procedural default argument, we need not address this latter claim.

**4.** The procedural default rule, which appellant also invokes, addresses similar concerns. *See Engle v. Isaac*, 456 U.S. 107, 128–29, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (where trial default bars adjudication of constitutional claim in state courts, "the trial court has ... no opportunity to correct the defect ... [and t]he state appellate courts have no[ ] chance to mend their own fences and avoid federal intrusion").

preclude collateral review of Fourth Amendment rulings adverse to the prosecution. Once again, we believe that arguments based on symmetry have little force in the context of a habeas proceeding. We also find, again, that the reasoning behind the doctrine invoked by appellant does not support appellant's position. *Powell* is premised on the notion that, because the exclusion of unconstitutionally seized evidence is simply a prophylactic device, a petitioner claiming that evidence should have been excluded on Fourth Amendment grounds is merely "asking society to redetermine an issue that has no bearing on the basic justice of his incarceration." *Id.* at 492 n. 31, 96 S.Ct. at 3051 n. 31. Where a state claims that certain evidence suppressed at the appellate level was properly admitted at trial, however, the Fourth Amendment issue will directly bear on the basic justice of the petitioner's incarceration if the remaining evidence is insufficient to support his conviction, so that the constitutionality of his conviction turns on whether the suppressed evidence was properly admitted in the first instance. Accordingly, we find that the district court's redetermination of the Fourth Amendment issue is not inconsistent with the Supreme Court's holding in *Stone v. Powell.*

■ The most important reason that the district court should not have reviewed the search and seizure issue, appellant argues, is the well-established principle that a state court decision resting on an adequate and independent state ground "is immune from review in the federal courts." *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977). The claim is that the Appellate Division's suppression order was based on state law, and so could not be reviewed, even if the introduction of the guns at trial did not deny Pinkney any federal constitutional rights. Appellant

bases his claim on the fact that the Appellate Division cited two state cases, along with two federal cases, in support of its determination that the search in question was unlawful. *See People v. Pinkney*, 135 A.D.2d at 749, 522 N.Y.S.2d at 654.

Under *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), a state court ruling based on an ambiguous mix of federal and state precedents is assumed to have been based on federal grounds, and so may be reviewed by a federal court, absent a "plain statement" by the state court that the federal cases were used "only for the purpose of guidance." *Id.* at 1041, 103 S.Ct. at 3476; *see also Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989) (holding "plain statement" rule applicable in habeas corpus proceedings pursuant to 28 U.S.C. § 2254). We find that the Appellate Division made no "plain statement" that its suppression decision rested on state grounds, but rather, after cursory reasoning, made ambiguous reference to both federal and state cases.[5] We therefore conclude that the district court could properly reach the search and seizure issue.

■ Appellant would next have us hold that relitigation of the search and seizure issue was precluded by the doctrine of collateral estoppel.[6] Specifically, appellant argues that the Appellate Division order reversing Pinkney's weapons possession conviction was a final judgment on the merits, and the decision on the search and seizure issue was a necessary element of that judgment.

■ The district court's determination that the prosecution was not precluded from relitigating the validity of the search of appellant's car rested, in part, on a finding that the prosecution was not provided a

---

**5.** Appellant's suggestion that we consider what law the Court of Appeals *might* have rested its decision on had it actually reviewed the Appellate Division order is without merit. It is axiomatic that the plain statement rule can apply only to an actual judicial opinion, and cannot apply to some hypothetical opinion of a court that did not review the case. *Cf. Harris*, 109 S.Ct. at 1043 (plain statement rule addressed to

"last state court rendering a judgment on the case").

**6.** Appellant also invokes the doctrine of res judicata or "claim preclusion." However, because this case does not involve relitigation of a claim or cause of action but only of a discrete issue, the question of res judicata is not presented.

full and fair opportunity to litigate that issue in the state courts. According to the district court, the prosecution did not seek review of the Appellate Division's suppression order because the sentences for the two weapons possession convictions, which were reversed by the order, ran concurrently with the longer sentence for the murder conviction, which was affirmed.[7] *See Pinkney v. Keane*, 737 F.Supp. at 196. We agree that the District Attorney may have had little incentive to appeal the search and seizure issue.[8] However, while lack of incentive to litigate vigorously may render the collateral estoppel doctrine inoperative, *compare Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979) (defendant's lack of incentive to defend vigorously may make offensive use of collateral estoppel unfair); *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 154–55, 531 N.Y.S.2d 876, 879, 527 N.E.2d 754, 757 (1988) (same); *Restatement (Second) of Judgments* § 28(5)(c) (1982) (same) *with In re American Ins. Co.*, 43 N.Y.2d 184, 192, 401 N.Y. S.2d 36, 41, 371 N.E.2d 798, 803 (1977) ("The consequences of issue preclusion between the same parties are not to be vitiated by lack of enthusiasm or effort on the part of the loser"), lack of incentive to appeal does not have the same effect.

Rather, failure to appeal an adverse judgment negates the preclusive effect of that judgment only when review was unobtainable "as a matter of law."[9] *Restatement (Second) of Judgments* § 28(1) (1982). Where review is available but is not sought, estoppel applies. *Id.* § 28(1) comment a.[10] The District Attorney had sufficient incentive to litigate the search and seizure issue in the Appellate Division, and was not disabled as a matter of law from seeking leave to appeal the reversal of the weapons possession convictions. By the ordinary operation of collateral estoppel, then, the Appellate Division's resolution of the search and seizure issue would be conclusive in a subsequent action between the parties.

Nevertheless, we find that, under the circumstances of this case, the district court's reexamination of the legality of the search of appellant's car was proper. We begin our analysis by observing that, as a general matter, collateral estoppel is less liberally applied in criminal cases than in civil actions, because "considerations peculiar to the criminal process may outweigh the need to avoid repetitive litigation." *People v. Plevy*, 52 N.Y.2d 58, 64, 436 N.Y.S.2d 224, 227–28, 417 N.E.2d 518, 521– 22 (1980).[11] In *Standefer v. United States*,

---

**7.** The district court also reasoned that "[b]ecause the District Attorney prevailed ... in sustaining petitioner's conviction for murder in the second degree, he could not appeal from the judgment affirming [that] conviction," and so could not challenge the finding on the subsidiary issue regarding the search of Pinkney's car. *Pinkney v. Keane*, 737 F.Supp. at 196. This, by itself, would indicate that the search and seizure determination was not essential to the judgment, and so has no preclusive effect. *See* D. Siegel, *Handbook on New York Practice* § 465, at 616 (1978) ("[E]stoppel will not operate on any issue which was decided against the winner in the first action."); *Restatement (Second) of Judgments* § 28(1) comment a (1982). The relevant fact in this case, however, is that the suppression ruling *was* essential to the reversal of the weapons possession convictions. Any preclusive effect of the suppression ruling would derive from the reversal, as to which the District Attorney was the losing party, and not from the affirmance.

**8.** There is no merit to appellant's argument that incentive was supplied by the fact that, had the

Court of Appeals granted Pinkney leave to appeal, failure to cross-appeal the suppression order might have foreclosed the District Attorney from relitigating the legality of the search and seizure. As the Court of Appeals recently stated, "it would be ... fundamentally unfair to give preclusive effect to a determination where the only incentive to litigate stems from its potential collateral effects." *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 155, 531 N.Y.S.2d 876, 879, 527 N.E.2d 754, 757 (1988).

**9.** A party is disabled from obtaining review as a matter of law when, for example, "the controversy has become moot, or ... the law does not allow review of the particular category of judgments." *Restatement (Second) of Judgments* § 28(1) comment a (1982).

**10.** Estoppel applies regardless of whether review is available as a matter of right, or simply as a matter of the appellate court's discretion. *See id.*

**11.** Appellant cites *People v. Acevedo*, 69 N.Y.2d 478, 515 N.Y.S.2d 753, 508 N.E.2d 665 (1987), as

---

447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court listed several considerations peculiar to criminal cases that made the application of nonmutual collateral estoppel[12] against the prosecution inappropriate, including "the important federal interest in the enforcement of the criminal law." *Id.* at 24, 100 S.Ct. at 2008. On this point, the Court noted that:

> '[T]he purpose of a criminal court is ... to vindicate the public interest in the enforcement of the criminal law while at the same time safe-guarding the rights of the individual defendant. The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction.'

*Id.* 447 U.S. at 25, 100 S.Ct. at 2008 (quoting *United States v. Standefer*, 610 F.2d 1076, 1093 (3d Cir.1979) (en banc)). The reasons for applying collateral estoppel less liberally in criminal cases are, we believe, particularly compelling in habeas proceedings, as the initiation of a collateral review inevitably sacrifices the concern for judicial economy underlying the doctrine of issue preclusion. However, while it is well established that collateral estoppel does not bar habeas petitioners from relitigating federal constitutional issues litigated fully and fairly in the state courts, *see Brown v. Allen*, 344 U.S. 443, 458–60, 73 S.Ct. 397, 407–09, 97 L.Ed. 469 (1953); *see also* 28 U.S.C. § 2254(d) (1988), the extent to which that doctrine bars prosecutors from relitigating issues in habeas proceedings that were necessarily decided in the state courts has, to our knowledge, never been addressed.

 When the defendant invokes collateral estoppel in the usual criminal case, the Government is seeking to relitigate an issue in a second prosecution that was necessarily resolved in defendant's favor in an earlier proceeding. Under those circumstances, relitigation is barred by the Fifth Amendment's guarantee against double jeopardy. *See Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970); *People v. Goodman*, 69 N.Y.2d 32, 37, 511 N.Y.S.2d 565, 569, 503 N.E.2d 996, 1000 (1986). However, "where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended." *United States v. Wilson*, 420 U.S. 332, 344, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975). This case does not raise the problem of multiple punishments, which occurs when a court imposes consecutive sentences in a single prosecution based on the same offense, *see Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), and so "prescrib[es] greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). We turn, then, to the question of successive prosecutions.

The idea underlying the prohibition on successive prosecutions is "that the State

---

evidence of the Court of Appeals' new sympathy toward the application of collateral estoppel in criminal cases. The *Acevedo* court held that collateral estoppel, as embodied in the Double Jeopardy Clause, could be applied in a criminal case to bar the State from relitigating evidentiary, as well as ultimate, facts. *Id.* at 487, 515 N.Y.S.2d at 759, 508 N.E.2d at 671. However, the *Acevedo* court reaffirmed the general rule that "for policy reasons," the considerations underlying collateral estoppel are less compelling in criminal prosecutions than in civil actions. *Id.* at 485, 515 N.Y.S.2d at 758, 508 N.E.2d at 670.

**12.** This case does not directly implicate the doctrine of nonmutual collateral estoppel, which is relevant only when different parties were involved in the prior proceeding, and has generally been found inapplicable in criminal cases. *See, e.g., Standefer*, 447 U.S. at 21–25, 100 S.Ct. at 2006–08 (in prosecution of aider and abettor, Government not precluded from relitigating guilt of principal, who had been acquitted in prior proceeding); *United States v. Ustica*, 847 F.2d 42, 49 (2d Cir.1988) (on retrial after mistrial, Government not barred from relitigating issue decided in favor of codefendant in separate appeal); *Mancuso v. Harris*, 677 F.2d 206, 209–10 (2d Cir.) (in habeas proceeding, State not barred from relitigating issue decided in favor of codefendant in separate habeas petition), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 382, 74 L.Ed.2d 514 (1982).

with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). No such abuse has occurred in this case. In the first instance, the State joined all charges against Pinkney in a single multi-count indictment, thus complying with even the broadest interpretation of the guarantee against double jeopardy. *See Ashe v. Swenson,* 397 U.S. at 453–54, 90 S.Ct. at 1199 (Brennan, *J.,* concurring) (espousing the view that "the Double Jeopardy Clause requires the prosecution ... to join at one trial all the charges against a defendant that grow out of a single criminal ... transaction"). In addition, relitigation of the search and seizure issue in the habeas court did not itself constitute an impermissible second prosecution: the habeas proceeding is not initiated by the State, and can in no way be likened to a second attempt to convict the petitioner for a single offense.[13] Finally, relitigation of the search and seizure issue could not subject Pinkney to any additional jeopardy. Had the habeas court affirmed the Appellate Division's decision that search of Pinkney's car was unconstitutional, Pinkney would have been left in no worse a position than if the issue had not been relitigated. However, because he lost on that issue, he will remain in custody under the jury's original verdict of conviction, a permissible result under the Double Jeopardy Clause. *Cf. Wilson,* 420 U.S. at 344–45, 95 S.Ct. at 1022–23 (holding that where a conviction is reversed after trial, the Double Jeopardy Clause does not bar a government appeal that, if successful, would only reinstate the conviction and would not subject defendant to a second trial). We therefore conclude that no double jeopardy values were of-

fended by the district court's review of the Appellate Division's suppression order.

It has been suggested that even when collateral estoppel is not required by the Double Jeopardy Clause, it may nonetheless be required by the Due Process Clauses of the Fifth and Fourteenth Amendments. *Compare United States ex rel. DiGiangiemo v. Regan,* 528 F.2d 1262, 1266 (2d Cir.1975) (dicta) (suggesting that due process may prevent relitigation at trial of an issue decided in defendant's favor at a pretrial hearing), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976); *Showery v. Samaniego,* 814 F.2d 200, 204 (5th Cir.1987) (Goldberg, J., dissenting) (due process collateral estoppel should bar relitigation of an issue decided in defendant's favor at bail revocation hearing) *with Showery,* 814 F.2d at 203 ("We are unpersuaded ... by [defendant's] attempts to erect a due process basis, independent of the double jeopardy clause, for the application of collateral estoppel."). The Supreme Court has discussed, but declined to reach, the question whether collateral estoppel is a due process requirement in state criminal trials. *See Hoag v. New Jersey,* 356 U.S. 464, 471, 78 S.Ct. 829, 832, 2 L.Ed.2d 913 (1958). Here, too, it is unnecessary to reach that question. When due process is at issue, the critical inquiry is whether the course of proceedings "led to fundamental unfairness." *Id.* at 467, 78 S.Ct. at 832. In this case, there is no doubt that the course of proceedings followed a constitutional path. As the district court aptly observed:

The present habeas corpus application is simply another stage of the same case. It is akin to an appeal by petitioner from the affirmance of the judgment of conviction by the Appellate Division. If the New York Court of Appeals had granted petitioner leave to appeal from the judgment affirming the conviction for murder in the second degree, the Due Process Clause would not have precluded the Dis-

**13.** To be sure, had the State brought successive prosecutions against Pinkney, the Double Jeopardy Clause would not permit an issue determined in Pinkney's favor in the first prosecution to be relitigated in a habeas petition arising out of a conviction in the second prosecution.

This result, however, follows from the fact that the State would be barred, under *Ashe v. Swenson,* from relitigating the issue in the second prosecution. It does not rest on the notion that the habeas proceeding itself triggered any double jeopardy protection.

trict Attorney from arguing that the search of the car was valid as an alternative basis for affirmance. There is no reason why the District Attorney should be in a worse position here.

*Pinkney v. Keane,* 737 F.Supp. at 196. *See generally* 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.2, at 387–88 (1988) (discussing the increased acceptance of the appellate analogy to federal habeas corpus).

■ In conclusion, we note that collateral estoppel is essentially "a rule of justice and fairness." *Ritchie v. Landau,* 475 F.2d 151, 155 n. 2 (2d Cir.1973); *see also Commissioners of State Ins. Fund v. Low,* 3 N.Y.2d 590, 595, 170 N.Y.S.2d 795, 798, 148 N.E.2d 136, 138 (1958). Our decision today, that the district court did not err in reviewing the Appellate Division's suppression order, is not an invitation to state prosecutors to reargue in habeas proceedings every state court ruling that favored the petitioner. We hold only that, when a federal district court, on habeas review, has reason to believe that a state appellate court erroneously reversed a state trial court ruling on an issue of federal law that directly bears on the constitutionality of petitioner's conviction, the district court may reexamine that issue in the exercise of its sound judicial discretion.

B. *The Legality of the Search of Appellant's Car.*

■ Even if the district court's review of the Appellate Division's suppression decision was proper, appellant argues, its conclusion on the merits was erroneous. Specifically, the claim is that Officer Fitzpatrick's initial entry into Pinkney's car constituted a warrantless search supported by neither probable cause nor exigent circumstances, and that it therefore failed to meet the requirements of the automobile exception to the warrant requirement. While we accept petitioner's characterization of Officer Fitzpatrick's initial entry

as a search, we reject his claim that this search was unconstitutional.

The question whether the search of appellant's car was supported by probable cause was analyzed at length by the district court. *See Pinkney v. Keane,* 737 F.Supp. at 192–94. We have nothing to add to the district court's analysis, with which we completely agree. We note only that Pinkney's evasive and false responses to Officer Fitzpatrick when questioned in the emergency room,[14] coupled with the officer's specific knowledge that a felony had just been committed in the neighborhood, argue strongly for a finding of probable cause. *See United States ex rel. Molloy v. Follette,* 391 F.2d 231, 232 (2d Cir.) (probable cause for arrest would be established by officer's reasonable cause to believe that a felony had been committed in the neighborhood, plus defendant's presence on a roof top with access to locus of crime and his "absurd explanation" for his presence there), *cert. denied,* 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed.2d 658 (1968); *United States ex rel. McCullers v. McMann,* 370 F.2d 757, 758–59 (2d Cir.1967) (probable cause for arrest established, where arresting officers knew that a felony had been committed, and defendant, found near scene of crime, told officers suspicious story). Given the additional circumstances known to Officer Fitzpatrick, including the fact that Pinkney, though bleeding profusely from the leg, had chosen not to drive up to the emergency room but rather to park a block and a half away, we have no doubt that the officer had probable cause to search Pinkney's car.

■ We also agree with the district court's conclusion that the search of Pinkney's car was constitutional. Assuming that appellant is correct that the existence of probable cause does not, in and of itself, permit the warrantless search of an automobile absent exigent circumstances, *see Michigan v. Thomas,* 458 U.S. 259, 261 n. 2, 102 S.Ct. 3079, 3081 n. 2, 73 L.Ed.2d 750

---

**14.** Pinkney told Officer Fitzpatrick that he had been robbed on the Van Wyck service road and that he had walked from there to Jamaica Hospital for treatment. This story was quickly contradicted by the bloody footprints that led not to the Van Wyck service road, but to a parked car a block and a half from the hospital.

(1982) (per curiam); *Coolidge v. New Hampshire*, 403 U.S. 443, 458–64, 91 S.Ct. 2022, 2033–37, 29 L.Ed.2d 564 (1971), we find that there was an exigency in this case. In *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), the Supreme Court found that exigent circumstances existed where a defendant drove to the police station for questioning and was there placed under arrest, after which his vehicle was towed in from a nearby public lot and examined. *See id.* at 593, 94 S.Ct. at 2470. The police in *Cardwell* had the defendant in custody at the time they seized his car, making it unlikely that he would be able to move the car or its contents. If exigent circumstances were present in *Cardwell*, then they were certainly present in this case, where the defendant lay in an emergency room, only temporarily immobilized by his condition, and it was highly likely that he would, soon upon recovery, drive off. Under these circumstances, the search of Pinkney's car was lawful, and the handguns found as a result of the search were properly admitted at Pinkney's trial.

## CONCLUSION

Accordingly, because we are satisfied that appellant's conviction occurred without constitutional violation, we affirm.